Rockingham,
Jan. 5, 1937.

## HEDDING CAMP MEETING ASSOCIATION *v.* EPPING.

*Arthur E. Sewall* and *Thomas L. Cleaton* (*Mr. Sewall* orally), for the plaintiff.

*Batchelder & Wheeler* (*Mr. Batchelder* orally), for the defendant.

ALLEN, C. J. The plaintiff was chartered by special act (Laws 1863, *c.* 2827) for such "religious, moral, charitable and benevolent purposes" as it might from time to time designate. The charter as modified by amendment (Laws 1891, *c.* 250) exempted from taxation its property except its cottages and rented buildings.

By general law (Laws 1913, *c.* 115; P. L., *c.* 60, *s.* 22) charitable and religious societies, among other institutions, were exempted from taxation of their personal property and also of real estate "owned

and occupied by them . . . for the purposes for which they are established, . . . provided none of the income or profits of the business of such corporations or institutions . . . is used . . . for other than . . . charitable or religious purposes."

The 1913 act contains a section (2) which reads: "All special acts exempting property of any such corporation or institution from taxation, unless such property is used as specified in section 1 of this act, and all acts or parts of acts inconsistent with this act are hereby repealed, . . ." This section is not embodied in Public Laws, the 1926 revision of the general statute law, and the omission accomplished a repeal of the section. How far the repeal operated to revive the exemptions of the plaintiff's charter and amendment thereto, becomes an inquiry. It did not revive them (P. L., c. 2, s. 37) unless "such construction would be inconsistent with the manifest intent of the legislature (Ib., s. 1). The general statute was designed to establish a uniform scheme for tax exemptions of charitable institutions (St. Mary's School v. Concord, 80 N. H. 436), and no intent appears in the 1926 revision that it should not supersede the grant of exemptions in special instances. If there may be exceptions in particular cases, the reasons therefor are not here applicable. The master's ruling that the amendment of the plaintiff's charter has not been repealed, so far as it subjected certain of the plaintiff's property to taxation, was therefore erroneous. The general act is the sole law by which the plaintiff's exemption privileges are to be ascertained.

In St. Mary's School v. Concord, supra, 438, the legislative intent was found to be "clear that property in the actual possession of others, occupied by tenants who are not students or officers of the corporation, should be taxed, and all other real estate occupied by such institution for its purposes should not be taxed."

Applying this general test, three items of property taxed are designated as a store building, dining hall, and cook house. Parts were rented and parts reserved for use incidental to the plaintiff's camp-meetings. Only the rented portion of the buildings was assessed for taxation. The plaintiff is entitled to no abatement of the tax thereon. It did not occupy the property taxed. Another item is a toolhouse. Being rented, it also was unoccupied by the plaintiff, and hence taxable.

Two other items are a water system and an electric system. The contention that they are personal property cannot be accepted. If they are not to be considered within the common-law classification

of real estate as appurtenances to other realty, the statute (P. L., c. 60, ss. 6, 7) requires that they be considered as real estate for purposes of taxation.

The master found they "were not called for by any of the activities" the plaintiff's charter authorized but were only needed for the convenience of its rented property. Regardless of the need therefore, if there was a use of them reasonably made in the conduct and management of the plaintiff's religious and charitable undertakings, the proportion of the use therefor to other use measures the part of their value which is tax exempt. No difference in principle exists between such division of use and the use of a building partly rented and partly occupied by the plaintiff. The report indicates that some use of the systems was made by the plaintiff. But without showing the extent of such use in proportion to other use, the plaintiff has not furnished proof of its right to abatement therefor. It may have an abatement only as it supplies sufficient evidence of its right thereto.

Another item is land partly used for growing timber and partly consisting of groves of which persons owning cottages on the plaintiff's property make the chief use. So far as the land is an incidental enjoyment attaching to the cottages, it appears to be of a free and gratuitous character. It is not shown that there is a use and occupancy by the cottagers to which they are entitled as of right in connection with their leases of the land where their cottages have been erected, or that they pay rent for such use and occupancy. The general occupancy remains in the plaintiff, and the rights of the cottagers, so far as appears, are no more than of invited guests.

This land and the growth of timber on it have the same features in passing on their taxability. The plaintiff is in occupancy and the timber is held as an investment for its purposes. In prior years timber was cut from the land to a substantial amount and the proceeds turned into the plaintiff's treasury and mingled with its working fund for carrying on its projects.

The general act declares an exemption of property occupied by an institution but not directly used in the course and conduct of its ultimate objects. If "the income or profits of the business" of the institution are "used or appropriated" for those objects (P. L., c. 60, s. 22), the exemption applies to the property employed in the business. It is a form of investment analogous to one of personal property; and as all of the personal property of an institution of the requisite character is exempt, it is deemed to be within the legislative contemplation that real estate owned and occupied by the in-

stitution and held either for investment or for eventual use in the direct service of its organic purposes shall be tax exempt.

This construction extends but slightly that adopted in *St. Mary's School* v. *Concord, supra*. There land was bought as a location for a school building to be erected at some indefinite time depending upon available funds therefor. It was held that it was "acquired to carry out the purposes of the incorporation," and being thus owned, it was tax exempt, so far as it was unrented, from the time of its purchase. Here the timber land and the growth thereon are held to further the plaintiff's primary objectives. In both cases the actual character of use at the taxing dates was the same. It is use in aid of the final purpose rather than immediacy of use in such purpose that is determinative. The items of timber and timber land, including the part of it designated as groves, are not taxable.

Certain organizations have been allowed locations for occupancy for their purposes, with no charge for rent. The organizations, Boy Scouts and Girl Scouts, are charitable institutions, and the use of the plaintiff's land by them is a benevolence within the objects of its charter. But unless they are locally organized so as to make it specifically appear that they are "of such a character and so administered as to be of any substantial benefit or advantage to the public of this state" (*Carter* v. *Whitcomb*, 74 N. H. 482, 491), the plaintiff fails in a required element of proof.

There remains the farm house. At the taxing date it was occupied by the plaintiff's caretaker. His duties were of general oversight of its property including that which was rented. His occupancy was a part of his compensation. The service rendered for the rented property was paid by the rentals or special assessments against the property. The caretaker was an agent and not a tenant, and his occupancy was that of the plaintiff. The fact that his service in some measure inured to the use and enjoyment of the rented property did not make its lessees occupants of the farm. The tenants of the property which they rented had with it no use of the farm house, although they indirectly paid to some extent for the caretaker's occupancy of it. It would be to disregard the actual situation to say that his occupancy was supplementary to their occupancy of other property.

The defendant takes the position that some of the plaintiff's property is used for purposes not charitable or benevolent. In the sense of direct use this is true, but in the sense that the final devotion of the property or its income is to those purposes, there is such use. The

plaintiff is not chargeable with engaging in enterprises not within the sphere of its charter powers. In the end all that it owns and all that it does in a business way is a means for the furtherance of its charitable objectives. And its revenue, though first applied in expenditure for the maintenance and development of the property, is not for that reason to be held to be received for purposes outside those its charter states. "Dartmouth College is in a sense a business. It receives between one and two hundred thousand dollars annually for tuition. It may be said to be in the business of selling education to that extent yearly. But that fact does not destroy its character as a public charity. The reason is the absence of private ownership." *Glover* v. *Baker*, 76 N. H. 393, 418.

*Case discharged.*

PAGE, J., was absent: the others concurred.